Staples, J.,
delivered the opinion of the court.
This is an appeal from a decree of the chancery court of Richmond. The evidence satisfactorily establishes that John A. Hutcheson, in the month of March, 1862, sold a tract of land near the city of Richmond, known as Windsor, for the sum of $22,570 in Confederate money; that his wife, Mrs. Emily T. Hutcheson, when she was informed of the sale, was greatly disturbed and dissatisfied with it, and peremptorily refused to relinquish her contingent dower interest therein. After repeated consulta *815 lions on the subject, Mr. Hutcheson agreed that he would purchase another tract, and settle it on his wife, if she would unite with him in the deed of conveyance to thepurehaser of the Windsor farm. With this understanding Mrs. Hutcheson executed the deed, and’ relinquished her dower interest in the Windsor farm. Shortly after-wards—not later than the 3d of April, 1862—Mr. Hutcheson accordingly purchased what is known in the record as the Winkler farm, containing about forty acres, at the price of $3,200, Confederate money. There is good reason to believe that Mrs. Hutcheson did not sign the deed for the Windsor place until her husband had actually purchased the Winkler land; nor is there a shadow of doubt but that this latter purchase was made for the purpose of carrying out in good faith the agreement between Mr. and Mrs. Hutcheson. No deed was, however, executed till November, 1867, when Winkler’s executrix conveyed the property to a trustee for the benefit of Mrs. Hutcheson and her children.
The delay in executing the deed grew out of causes connected with the war and certain litigation which need not be explained here, as it is not material to the present enquiry.
After the purchase, however, Mrs. Hutcheson was recognized as the owner, the property was understood in the community to be hers, and in due time it would be secured to her and her children. These facts are fully established by the testimony of witnesses.
That such agreements between husband and wife, when -executed, will be sustained by courts of equity, or, if not executed, will be specifically enforced, is now well settled. It is only necessary to refer to Davis’ widow v. Davis’ creditors, 25 Gratt. 587; Burwell’s ex’or v. Lumsden, 24 Gratt. 443, and the authorities there cited, for a full discussion of the principles involved in this class of cases.
*816 The next point of enquiry is whether the settlement is either fraudulent or excessive. There is not the slightest proof of fraud in the transaction. On the contrary, all the circumstances tend to repel any such idea.
If Mr. Hutcheson owed any debts at the time, they were very small compared with the value of his estate, and they have long since been paid off.
It seems, however, that Mr. Hutcheson qualified in April, 1867, as the administrator of Thomas S. Dickins, and entered into bond in the penalty of $13,000 for the faithful discharge of his duties. He wasted or mismanaged the estate, and his liability thus incurred is the foundation of this suit by the legatees to impeach the settlement. . It is very true that this liability relates to the time of the qualification as executor, which was anterior to the execution of the deed to Mrs. Hutcheson’s trustee, but the agreement to make the settlement was entered into in 1862, nearly five years before Mr. Hutcheson’s qualification as executor, and before any liability had occurred from the administration of the estate. The appellants are therefore subsequent creditors, and as such, in the absence of actual fraud, occupy no higher ground than their debtors. The equity of the appellee, Mrs. Hutcheson, is as strong against them as against her husband.
If, therefore, the settlement should be regarded as voluntary or excessive, it would still be valid as against the appellants.
But discarding this view entirely, let us enquire whet her the settlement is in fact excessive. And here it may be proper to say the court will not interfere with the settlement unless it plainly appears that the property conveyed to the wife greatly exceeds the value of the dower interest. As was said in Burwell’s ex’or v. Lumsden et als., it is extremely difficult to determine, with anything like accuracy, the value of the wife’s contingent right of dower, the hus *817 band being still alive. No fixed rule can be laid down on the subject. The most that can be said is, that in the absence of fraud, the settlement will not be disturbed unless it plainly appears to be grossly excessive.
In the present case, according to the report of the commissioner, if we go back to 1862, and make a conjectural estimate of the wife’s contingent dower interest, founded upon the tables of mortality, it would seem that the settlement is excessive. But it appears that Mr. Hutcheson died in 1871, and if we look to the actual value of the dower as now appears after the death of the husband, Mrs. Hutcheson has not received more than a just equivalent for what she relinquished. It may be admitted that when the suit is brought to impeach the settlement while the husband is alive, resort must of necessity be had to the tables of mortality to ascertain the value of the contingent right of dower after the death of the husband. This rule, in many cases, could not be adopted with safety after the death of the husband, or with justice to all parties. The calculation of the chances of life must be made, not only with reference to ihe wife, but the husband also; his health, peculiarities of constitution, and other attending circumstances.
Without a full understanding of these matters, no commissioner can fix a reliable estimate of the husband’s expectancy of life; no court could safely pronounce a settlement excessive upon any calculations made in the absence of such data.
An estimate of the value of the dower interest in 1862, made after his death in 1871, without reference to the circumstances affecting his expectancy of life, must of necessity be unreliable. The delay of the appellants, in instituting their suit, renders it necessary and proper that the court should look at all the facts as they existed before and since the death of Mr. Hutcheson, in order to form a just estimate of the settlement,
*818 In the light of these facts, it is manifest that the wife has not received more than a just equivalent for the interest relinquished by her. No injustice has been done the creditors. The appellants certainly have no just cause for complaint. We are therefore of opinion that the decree of the chancery court is correct, and should be affirmed.
Decree appirmed.